**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alvie Copeland Kiles,<br><br>              Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>             Respondents. | No. CV-17-04092-PHX-GMS<br><br><u>DEATH-PENALTY CASE</u><br><br>**ORDER** |

Pending before the Court are Respondents' Motion to Set Reasonable Page Limits for Habeas Petition, Answer, and Reply (Doc. 11), and Motion to Preclude Juror Contact (Doc. 13).[1] The motions are fully briefed. (Docs. 20–21, 23–24.) The Court addresses the motions as follows.

**1.      Page Limits**

Respondents ask the Court to set "reasonable page limits on the habeas petition, answer, and reply," with a limit of 150 pages for the petition and answer and 75 pages for the reply. (Doc. 11 at 6.) They argue that the Court has discretion to set such limits and cite as examples the page-limits imposed by other federal courts, and by a Magistrate Judge in a non-capital case in this Court. (*Id.* at 3.) However, the District of Arizona has not placed page limits on capital habeas petitions, and the issue is being reviewed as a

---

[1] Respondents filed a third motion asking the Court to preclude the defense team from contacting the victims in this case. (Doc. 12.) Consideration of this motion was stayed pending the resolution in a separate case involving a constitutional challenge to the Arizona statute on which Respondents rely in their motion to preclude victim contact. That case was resolved and briefing has resumed on Respondents' third motion. The Court will address the motion by separate order.

matter of District Court policy. *See Morris v. Ryan*, No. CV 17-00926-PHX-DGC (Sep. 28, 2017) (Doc. 16). The Court is unwilling to impose page limits on an ad hoc basis, therefore Respondents' motion is denied.

**2.     Juror Contact**

Respondents ask the Court to preclude Petitioner's "defense team from contacting trial jurors absent leave of Court based on a threshold showing of good cause." (Doc. 13 at 1, 4.) Petitioner contends that habeas counsel must be allowed to interview jurors in order to competently investigate claims alleging juror misconduct and extraneous influences upon the jury, as well as counsel's failure to investigate such issues. (Doc. 20 at 1–2.) This Court grants Respondents' motion in part based on the following considerations.

There is no statute, rule, or law prohibiting federal habeas counsel from interviewing jurors to discover admissible evidence of juror misconduct, or requiring a showing of good cause prior to contacting jurors. *See Harrod v. Ryan*, No. CV-16-02011-PHX-GMS, 2016 WL 6082109, at *2 (D. Ariz. Oct. 18, 2016).

Nonetheless, there are safeguards in place that address the long-recognized and very substantial concerns supporting the protection of jury deliberations from intrusive inquiry. *Tanner v. United States*, 483 U.S. 107, 127 (1987); *see also Traver v. Meshriy*, 627 F.2d 934, 941 (9th Cir. 1980) (explaining that because evidence concerning the manner at which a jury arrived at its verdict is inadmissible to test the validity of a verdict, "the practice of counsel in propounding questions on these subjects to jurors after trial should be discouraged"). Rule 606(b) of the Federal Rules of Evidence is grounded in the common-law rule against admission of jury testimony to impeach a verdict. Rule 606(b) allows jury testimony only in limited circumstances to show that (1) extraneous prejudicial information was improperly brought to the jury's attention, (2) an outside influence was improperly brought to bear upon any juror, or (3) there was a mistake in the verdict form. Fed. R. Evid. 606(b); *see Tanner*, 483 U.S. at 121.

The Supreme Court recently recognized another exception to the no-impeachment rule. In *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855, 869 (2017), the Court held that "where a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment requires that the no-impeachment rule give way in order to permit the trial court to consider the evidence of the juror's statement and any resulting denial of the jury trial guarantee." The Court explained that "[n]ot every offhand comment indicating racial bias or hostility will justify setting aside the no-impeachment bar to allow further judicial inquiry." *Id.* Instead, "the statement must tend to show that racial animus was a significant motivating factor in the juror's vote to convict." *Id.* The Supreme Court acknowledged that the "practical mechanics of acquiring and presenting such evidence will no doubt be shaped and guided by state rules of professional ethics and local court rules, both of which often limit counsel's post-trial contact with jurors." *Id.*

Ninth Circuit law makes clear that, generally, interviewing jurors about their deliberative process is both improper and unethical.[2] *Northern Pac. Ry. Co. v. Mely*, 219 F.2d 199, 202 (9th Cir. 1954) ("We do hold for future guidance that it is improper and unethical for lawyers . . . to interview jurors to discover what was the course of deliberation of a trial jury."); *see also Harrod*, 2016 WL 6082109, at *2. Counsel shall adhere to the applicable ethical rules and shall abide by their declaration that they "will make clear to jurors that they are under no obligation to speak with counsel, and counsel will not harass jurors." (*See* Doc. 20 at 10.) To the extent counsel pursue a proper and ethical course of investigation into juror conduct that falls within the allowed exceptions

---

[2] This Court's Local Rules of Civil Procedure, Rule 83.2(e), subjects attorneys practicing in this Court to the Rules of Professional Conduct of the Arizona Supreme Court. In addition to the requirements above, those rules require that a lawyer "shall not . . . communicate with a juror or perspective juror after discharge of the jury if . . . the juror has made known to the lawyer a desire not to communicate; or . . . the communication involves misrepresentation, coercion, duress or harassment." Ariz. R. Sup. Ct. 42, E. R. 3.5.

listed above, it is not necessary to impose a good cause standard because counsel are ethically obligated not to pursue inadmissible evidence about the jurors' deliberations.

Finally, while Arizona law does not prohibit post-verdict contact with jurors, the Arizona Rules of Criminal Procedure protect juror privacy, and this Court will require counsel to abide by those protections. *See* Ariz. R. Crim. P. 18.3 (requiring confidentiality of juror biographical information).

For the reasons set forth above,

**IT IS ORDERED DENYING** Respondents' request to impose page limitations (Doc. 11).

**IT IS FURTHER ORDERED GRANTING** Respondents' Motion to Preclude Juror Contact (Doc. 13) to the extent it would prevent Petitioner from using the information deemed confidential under Arizona Criminal Rule 18.3 to locate and interview jurors. Petitioner is, however, not otherwise restricted from using other publicly available information for locating the juror's in this case.

**IT IS FURTHER ORDERED GRANTING** Respondents' Motion to Preclude Juror Contact to the extent it would prevent Petitioner from questioning jury members on matters not admissible in evidence absent further authorization of this Court.

**IT IS FURTHER ORDERED DENYING** Respondents' Motion to Preclude Juror Contact to the extent it would prevent Petitioner from questioning jurors' concerning extraneous influences on the jury, or whether a juror made a clear statement that indicates racial animus was a significant motivating factor in a juror's vote to convict.

Dated this 6th day of April, 2018.

*G. Murray Snow*
Honorable G. Murray Snow
United States District Judge